UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

UNITED STATES OF AMERICA

VERSUS                                              CRIMINAL NO. 1:25-CR-121-TBM-RPM

IOAN JOHN TAMPA et al

**ORDER DISQUALIFYING COUNSEL**

Before the Court is the Government's motion for judicial inquiry. [55]. In its motion, the Government asserts that Defendants' attorneys have potential conflicts of interest based on representing multiple Defendants and/or witnesses. Attorney Michael Hurst currently represents Defendants Ioan John Tampa (John Tampa); Ascent Hospitality Management Co., LLC (Ascent); and Tampa Construction.[1] John Tampa is the designated corporate representative for Ascent and Tampa Construction. Attorney Arthur Jernigan currently represents Ascent as well as Defendant Yagnesh Patel. Attorney Joseph Hollomon also represents Defendant Patel. Citing to Federal Rule of Criminal Procedure 44(c), the Government requests that the Court conduct an inquiry into potential conflicts of interest to determine whether disqualification of defense counsel is appropriate. Defendants oppose the motion. On September 29, 2025, the Court conducted a hearing on the Government's motion.

Defendants John Tampa and Yagnesh Patel own numerous hotels and hotel entities. In April 2020, Tampa and Patel applied for and received loans for these hotels as part of the Paycheck Protection Program (PPP) and the CARES Act. Beginning in approximately February

---

[1] Attorneys Joe Sam Owen and Richard Joel Smith, Jr. formerly served as co-counsel for Tampa, Ascent, and Tampa Construction as well. On October 21, 2025, the Court granted the motion for Owen and Smith to withdraw as counsel of record. [93].

2022, the U.S. Attorney's Office undertook a civil investigation to determine whether Tampa and Patel obtained the loans through fraudulent representations made during the application process. The Government obtained records and conducted depositions through Civil Investigative Demands (CID).  During the CID process, Attorneys Hurst and Jernigan represented Tampa, Patel, and their family members, as well as the hotel entities.  Hurst and Jernigan began representing Ascent, Tampa, and Patel in 2022.

In July 2024, hotel entities owned by Tampa and Patel filed declaratory actions across several districts which ultimately were transferred to this district and consolidated.  *See Classic Hotels, LLC et al v. United States Small Bus. Admin. et al*, Civil Action No. 1:24-cv-213-TBM-RPM.  In these complaints, the hotel entities sought an order from the Court finding they did not commit PPP fraud and are eligible for PPP loan forgiveness.  The hotel entities were represented by Hurst and Jernigan.[2]  On March 31, 2025, the plaintiffs in the declaratory actions negotiated a settlement with the Government while represented by Hurst and Jernigan.

Attorney Hollomon represented G.S., an Ascent employee, during a criminal investigation launched by the U.S. Attorney's Office regarding the PPP loans.  Hollomon was retained in January 2025 to represent G.S. for a grand jury document return and interview with the Government.  Hollomon's representation ended with G.S.'s grand jury appearance in March 2025.

On June 24, 2025, a grand jury returned an indictment against the four defendants in the instant criminal matter.  [1].  In sum, the indictment alleges that Defendants conspired to obtain PPP loans and loan forgiveness by fraudulent means.  Shortly thereafter, Hurst entered an appearance for Tampa, Ascent, and Tampa Construction [11] [13] [15]; Jernigan entered an

---

[2] Ascent was not a party to the declaratory actions, but it was listed as an affiliated company.  *See Classic Hotels, LLC*, Civil Action No. 1:24-cv-213-TBM-RPM ([3-1]).

appearance for Patel and Ascent [14] [17]; and Hollomon entered an appearance for Patel [12]. At the hearing, Jernigan indicated that his representation of Tampa ended approximately two weeks before the indictments. Presumably, Hurst's representation of Patel ended around the same time.

## Law and Analysis

With respect to the individual defendants, it is undisputed that Attorneys Hurst and Jernigan previously represented both Tampa and Patel in closely related civil matters, but Hurst represents only Tampa in the current criminal matter, and Jernigan represents only Patel in the current criminal matter. With respect to the corporate entities, it is undisputed that Hurst and Jernigan both represented Ascent in previous civil matters; both continue to represent Ascent in the current criminal matter.[3] Only Hurst represents Tampa Construction.[4] At issue are the following: (1) whether the attorneys' prior joint representation of Tampa and Patel in civil actions creates a disqualifying conflict of interest now that Hurst represents only Tampa and Jernigan represents only Patel in the criminal matter; (2) whether Jernigan's current representation of Ascent, with Tampa serving as the corporate designee, creates a disqualifying conflict of interest; (3) whether Hurst's and Jernigan's prior representation of family members who will be called to testify by the Government creates a disqualifying conflict of interest; and (4) whether Attorney Hollomon's former representation of an Ascent employee during the criminal investigation process creates a disqualifying conflict of interest now that Hollomon represents Patel.

---

[3] According to defense counsel, Ascent is a limited liability company whose members are Tampa and Patel, each with a 50 percent ownership; Tampa is the managing member of Ascent.
[4] Tampa Construction was a limited liability company with Tampa as the sole owner; however, according to defense counsel, Tampa Construction has since been dissolved.

The Sixth Amendment protects a person's right to select and be represented by his counsel of choice, but that right to choose is not absolute. *Wheat v. United States*, 486 U.S. 153, 159 (1988); *United States v. Gharbi*, 510 F.3d 550, 553 (5th Cir. 2007). While the Sixth Amendment guarantees effective assistance of counsel for each criminal defendant, there is a correlative right to representation that is conflict free. *Wood v. Georgia*, 450 U.S. 261, 271 (1981); *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006). A conflict will exist when defense counsel is compelled to compromise his duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client. *Garcia-Jasso*, 472 F.3d at 243 (citing *Perillo v. Johnson*, 205 F.3d 775, 781 (5th Cir. 2000)). The undivided loyalty of counsel is essential to due process. *United States v. Alvarez*, 580 F.2d 1251, 1256 (5th Cir. 1978). "[T]rial courts, when alerted by objection from one of the parties, have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment." *Wheat*, 486 U.S. at 161.

Generally, "[d]isqualification cases are governed by state and national ethical standards adopted by the court." *FDIC v. United States Fire Ins. Co.*, 50 F.3d 1304, 1311 (5th Cir. 1995). This Court has adopted the Mississippi Rules of Professional Conduct. L.U.Civ.R. 83.5. Mississippi's Rules of Professional Conduct provide:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless the lawyer reasonably believes:
>
> (1) the representation will not adversely affect the relationship with the other client; and
>
> (2) each client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the adverse representation and the advantages and risks involved.

4

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless the lawyer reasonably believes:
>
> (1) the representation will not be adversely affected; and
>
> (2) the client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the representation and the advantages and risks involved.

Miss. R. Prof'l Conduct 1.7. The Comment to Rule 1.7 provides: "Loyalty is an essential element in the lawyer's relationship to a client.... As a general proposition, loyalty to a client prohibits undertaking representation directly adverse to that client without that client's consent." The Comment continues: "Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests." The Mississippi Rules of Professional Conduct also provide that a lawyer who has formerly represented a client in a matter shall not thereafter:

> (a) represent another in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
>
> (b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

Miss. R. Prof'l Conduct 1.9.

Even where a conflict exists, a defendant can knowingly and intelligently waive the conflict of interest. *United States v. Sanchez Guerrero*, 546 F.3d 328, 332 (5th Cir. 2008). Here, Defendants and their family members have executed conflict-of-interest waivers. Even where waivers have been provided by the affected parties, "federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and

5

that legal proceedings appear fair to all who observe them." *Id*. at 160.  Under the applicable professional ethical standards, an attorney owes his former client not just a duty to preserve client confidences, but also a duty to avoid accepting employment adverse to the former client's interests in the same or substantially related matter.  *Perillo*, 205 F.3d at 801.  At the same time, the attorney owes his current client a duty to advocate zealously on the current client's behalf, unhampered by any competing commitments to other clients.  *Ibid*.  "An actual conflict may exist and the Constitution is implicated when an attorney is placed or places himself or herself in a situation 'inherently conducive to divided loyalties.'"  *Perillo*, 205 F.3d at 801-02 (citations omitted).

As stated earlier, the right to counsel of one's choosing is not absolute. *United States v. Jackson*, 805 F.3d 200, 202 (5th Cir. 2015).  "The District Court must recognize a presumption in favor of [defendant's] counsel of choice, but that presumption may be overcome not only by demonstration of actual conflict but by a showing of a serious potential conflict." *Wheat*, 486 U.S. at 164.  The district court may refuse a waiver where a potential conflict may develop into an actual conflict at trial.  *Gharbi*, 510 F.3d at 553.  The inquiry focuses on whether there is an actual conflict, not merely a hypothetical or speculative conflict.  *United States v. Infante*, 404 F.3d 376, 391-92 (5th Cir. 2005); *Alvarez*, 580 F.2d at 1255.  "[A] district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly." *Wheat*, 486 U.S. at 162.

The presumption that a defendant may have counsel of his choosing can be overcome by demonstrating a serious potential conflict.  For example, in *Gharbi* the defendant attempted to retain an attorney who had represented his daughter in negotiating a plea bargain in which she

6

agreed to testify against the defendant. 510 F.3d at 552. The district court found this created an irreconcilable conflict of interest because if defendant's attorneys were to pull punches in cross-examining his daughter, they would render ineffective assistance of counsel to defendant. *Id.* at 553. On the other hand, if the attorneys attacked the daughter on cross-examination, they might jeopardize her plea agreement. *Ibid.* "In order to protect the rights of all parties and preserve the appearance of fairness, the district court held that Gharbi and his daughter needed separate and independent counsel." *Id.* at 553-54. The Fifth Circuit found the district court did not abuse its discretion in finding Gharbi and his daughter needed separate counsel. *Ibid.*

It is undisputed that both Hurst and Jernigan represented Tampa and Patel in prior civil matters. It is beyond debate that the subject matters of the civil fraud investigation, the declaratory actions, and the current criminal indictment are substantially related. The civil and criminal actions encompass the same alleged misconduct regarding applications for PPP loans and misuse of PPP loan proceeds. In fact, Hurst stated at the hearing he could not disagree with the proposition that the civil and criminal matters are substantially similar or closely related for purposes of disqualification analysis.

In its brief, the Government contends that Defendants "Tampa and Patel have differing levels of culpability." Doc. [86] at 6. At the hearing, counsel for the Government elaborated that Tampa had the most direct involvement in the scheme.[5] The Government indicated it is probable that the Government would engage in separate plea negotiations with Defendants based on their different levels of culpability. The Government also indicated that if it were to secure a plea agreement, the plea agreement ordinarily would contain a provision that the defendant cooperate and testify against his co-defendant. This alone creates divided loyalties and a serious

---

[5] The Government also suggests that Tampa may have forged Tampa's signature on loan documents. The Government intends to ask for writing exemplars.

potential conflict that cannot be waived.  For example, Jernigan cannot advise his current client, Patel, to accept a plea deal that would require Patel to cooperate and testify against Jernigan's former client, Tampa.  The same holds true in reverse for Hurst.  At the hearing, Hurst conceded that it would be a detriment to his former client (Patel), if he were to advise Tampa to accept a plea offer from the Government.  Given the Government's unambiguous representations that the individual defendants have different levels of culpability, and given the Government's representation that it intends to make a plea offer conditioned on cooperation, the conflict is not merely speculative or hypothetical.

Although the prospect of separate plea negotiations creates the most troubling conflict, there are other circumstances to justify the Court's disqualification of counsel.  For example, if the Government secures convictions of both Patel and Tampa, the conflict will manifest itself at sentencing.  As the Supreme Court has noted "multiple representation of criminal defendants engenders special dangers." *Wheat*, 486 U.S. at 159.  A conflict of interest may "prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another." *Id.* at 160.  To mitigate responsibility at sentencing, each Defendant's respective current counsel would likely attempt to shift blame onto the co-defendant, who happens to be the attorney's former client.  Moreover, Jernigan currently represents both Defendant Patel and Defendant Ascent, even though Ascent's corporate designee is Defendant Tampa.  This creates more potential for divided loyalties.

Hurst and Jernigan also represented family members during the prior CID process.  They represented them during depositions taken by the Government in May 2023, but their

representation ended shortly after the depositions. In its motion for judicial inquiry, the Government unequivocally asserts that it will be calling some family members to testify. [55] at 7. This creates yet another conflict for Hurst and Jernigan when confronted with the prospect of cross-examining former clients in their representation of current clients. *Perillo*, 205 F.3d at 801-02 ("An attorney who cross-examines a former client inherently encounters divided loyalties."). Hurst and Jernigan indicated there would be no need to cross-examine the family members because, in essence, the prior deposition testimony speaks for itself. The Government counters that the family members' testimony goes beyond the simple characterization presented by defense counsel. Defense counsel admitted they did not list all the issues testified to by family members because they did not have copies of the depositions. The Court finds unpersuasive defense counsel's casual willingness to forgo cross-examination of Government witnesses.

At the hearing, the Government also argued that simply conceding the family members' testimony could place them in a precarious situation. The Government alluded to the family members filing false tax returns in connection with the scheme, which could implicate their Fifth Amendment rights and require conflict-free counsel to advise them regarding discussions with the Government, possible immunity deals, and their testimony about the tax returns. In such a scenario, Hurst and Jernigan would not be able to cross-examine their former clients regarding the tax returns without violating a duty of loyalty.

Although Hurst and Jernigan labor under obvious conflicts that compel disqualification, attorney Joe Hollomon's involvement is more limited. In fact, the Government spent little time in the pleadings or at the hearing addressing Hollomon's conflict. He represented G.S., a former employee of Ascent, in the criminal investigation. His role was limited to assisting her in

responding to a grand jury document subpoena and representing her during an interview with the Government. During his representation of G.S., Hollomon indicated he had no contact with Tampa, Patel, or anyone else from Ascent. Nor did G.S. tell him anything that would create a conflict with his representation of Patel. Hollomon's representation of G.S. ended with the grand jury appearance. He was then retained to represent Patel after the indictment and immediately prior to the arraignment.

The Government has stated its clear intention to call Hollomon's former client as a witness at trial. [55] at 7. However, Hollomon's conflict will not manifest itself, if at all, unless and until this matter proceeds to trial and his former client is called as witness to testify for the Government. In some cases, a conflict such as this can be resolved by allowing co-counsel to cross-examine the former client. *See United States v. Burns*, 526 F.3d 852, 857 (5th Cir. 2008); *United States v. Miranda*, No. 21-51156, 2025 WL 457317, at *4 (5th Cir. Feb. 11, 2025) (attorney employed unaffected co-counsel to conduct former client's cross-examination). Presently, Patel does not have co-counsel. Thus, Hollomon would be tasked with cross-examining the former client. Nevertheless, the Court defers ruling on whether Hollomon labors under a disqualifying conflict with respect to G.S. For now, Hollomon is permitted to continue in his role as attorney for Patel. The Government may re-urge its motion to disqualify Hollomon at a later date.

IT IS THEREFORE ORDERED AND ADJUDGED that the Government's [55] Motion for Judicial Inquiry is GRANTED.

IT IS FURTHER ORDERED AND ADJUDGED that Attorneys Arthur Jernigan and Mike Hurst are hereby disqualified as counsel for Defendants; they are terminated as counsel of record effective immediately.

IT IS FURTHER ORDERED that Defendants Tampa, Ascent, and Tampa Construction shall have 60 days to obtain substitute counsel.

SO ORDERED AND ADJUDGED, this the 3rd day of November 2025.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE